**DULUTH POLICE LOCAL (Alan Champion), Appellant,**

**v.**

**CITY OF DULUTH, Respondent.**

**No. C9–90–1634.**

Court of Appeals of Minnesota.

Feb. 19, 1991.

Review Denied March 27, 1991.

Thomas F. Andrew, Duluth, for appellant.

Marylee Abrams, Bloomington, amicus for appellant.

Bryan F. Brown, Duluth, for respondent.

Considered and decided by KALITOWSKI, P.J., and SCHUMACHER and DAVIES, JJ.

## OPINION

SCHUMACHER, Judge.

Pursuant to Minn.Stat. § 572.09(a) (1988), appellant Duluth Police Local, a union representing employees of the Duluth Police Department, moved the St. Louis County District Court, to compel respondent City of Duluth to arbitrate a grievance involving the disciplinary suspension of Officer Alan Champion. The trial court denied the Union's motion. The Union now appeals claiming the trial court erred by concluding that provisions in the collective bargaining agreement calling for arbitration related only to contract disputes. The Union maintains the suspension is arbitrable and that review by the Civil Service Board is not the sole recourse under the collective bargaining agreement. Because the dispute raises a question as to the scope of the collective bargaining agreement, we believe the question should initially be determined by an arbitrator. We reverse.

## FACTS

The incident giving rise to Champion's suspension allegedly involved his use of physical violence against an unruly suspect arrested for DWI. After reviewing a video tape of the arrest, Duluth Police Chief Eli Miletich suspended Champion for twelve days without pay for "conduct unbecoming an officer, specifically, using excessive force."

After reviewing the video tape and conducting additional investigation, the Union Grievance Committee determined Champion's suspension was not "for cause" and filed a grievance challenging the suspension and requesting that Champion be reimbursed for wages lost during the suspension. Thereafter, the Union notified the City of its intention to submit the grievance to arbitration. The Union relied on the general procedure for pursuing arbitration set forth in Section 39 of the collective bargaining agreement between the Union and the City. The agreement provides in pertinent part:

2.12. *Grievance* means a dispute or disagreement as to the interpretation or application of the terms of this Agreement.

\*     \*     \*     \*     \*     \*

39.3. The Grievance Committee, may, within nine (9) calendar days after receipt of the reply of the Administrative Assistant submit the grievance to arbitration by serving notice in writing of such submittal upon the Administrative Assistant. The parties shall attempt to agree upon an arbitrator within seven (7) calendar days after submittal of the grievance to arbitration and in the event the parties are unable to agree upon an arbitrator within said seven (7) day period, either party may request the Public Employment Relations Board of the State of Minnesota to submit a panel of five (5) arbitrators.

The City refused to arbitrate the grievance claiming the terms of the collective bargaining agreement provided that review of disciplinary actions would be conducted by the Civil Service Board. The bargaining agreement provides in pertinent part:

34.2. The Chief or any unit leader acting for him or her, may for disciplinary purposes, suspend without pay any employee under his or her supervision in his or her department \* \* \*. He or she shall as soon as practicable give written notice to the employee stating the reason for the suspension, the duration thereof, and advise the employee he or she may within five (5) days from the date on which such notice is received, file an answer with the [Civil Service] Board and request an opportunity to be heard in his or her own behalf.

\*     \*     \*     \*     \*     \*

34.6. The finding and decision of the [Civil Service] Board shall be final and not subject to the grievance procedure.

Following the City's refusal to arbitrate, the Union brought action to compel arbitration. The trial court concluded the terms of the collective bargaining agreement calling for review of disciplinary actions by the Civil Service Board governed over the general grievance arbitration procedure.

## ISSUE

Did the trial court err by determining Champion's recourse was to appeal his suspension to the Civil Service Board rather than through binding arbitration?

## ANALYSIS

The issue of arbitrability is to be determined by ascertaining the intention of the parties through examination of the language of the arbitration agreement. *State v. Berthiaume*, 259 N.W.2d 904, 909 (Minn.1977). A reviewing court is not bound by the trial court's interpretation of the arbitration agreement and independently determines whether the trial court correctly interpreted the clause.

*Michael–Curry Cos. v. Knutson Shareholders Liquidating Trust*, 449 N.W.2d 139, 141 (Minn.1989).

In this case the Union argues that the City's refusal to arbitrate violates both the terms of the collective bargaining agreement and Minn.Stat. § 179A.20 (1988 & Supp.1989). However, the Union also questions whether the conflict over the proper manner of resolving the dispute concerning Champion's discipline is, in and of itself, an arbitrable grievance under the collective bargaining agreement. Thus, a threshold issue exists as to whether this initial procedural question should have been decided by an arbitrator.

In *Atcas v. Credit Clearing Corp.*, 292 Minn. 334, 197 N.W.2d 448 (1972), the Minnesota Supreme Court established guidelines to be followed in determining whether an issue is arbitrable:

(1) If the parties evinced a clear intent to arbitrate a controversy arising out of specific provisions of the contract, the matter is for the arbitrators to determine and not the court. (2) If the intention of the parties is reasonably debatable as to the scope of the arbitration clause, the issue of arbitrability is to be initially determined by the arbitrator subject to the rights of either party reserved under Minn.St. § 572.19, subd. 1(3, 5). (3) If no agreement to arbitrate exists, either in fact or because the controversy sought

to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled to arbitration (§ 572.09[a, b] ).

*Id.* at 341, 197 N.W.2d at 452. At first glance, it would appear that *Atcas* is at odds with the United States Supreme Court's decision in *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In *AT & T*, the Supreme Court stated "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649, 106 S.Ct. at 1418. This court has recently resolved the apparent conflict.

In *Local # 1119, AFSCME v. Mesabi Regional Medical Center*, 463 N.W.2d 290, 296 (Minn.App.1990), we determined Minnesota courts are not bound by *AT & T* when construing the Uniform Arbitration Act as adopted in Minnesota. *AT & T* involves an interpretation of the Labor Management Relations Act. 29 U.S.C.A. §§ 141–87, whereas *Atcas* involves an interpretation of the Uniform Arbitration Act. *Local # 1119*, 463 N.W.2d at 296.

The matter at hand similarly involves an interpretation of the arbitrability of the dispute pursuant to the Uniform Arbitration Act, Minn.Stat. § 572.08–.30 (1988). Thus, *Atcas* rather than *AT & T* is controlling.

Here, the Union and the City are in disagreement concerning the terms of the collective bargaining agreement. The City argues that because disciplinary disputes have always been reviewed by the Civil Service Board, the parties' course of dealings with regard to the collective bargaining agreement has established their intent to exclude such disputes from the grievance procedure. The Union, on the other hand, maintains the collective bargaining agreement manifests the parties' intent to provide for alternative means for handling disciplinary disputes.

Specifically, the Union relies on Article 34.2 which provides that the chief, after giving the employee notice of the suspension, shall advise the employee that he or she *"may"* request an opportunity to be heard before the Civil Service Board. Although the decision of the Civil Service Board is final and not subject to the grievance procedure, a question exists whether Article 34 was intended to foreclose the grievance procedure set forth in Article 34 as an initial alternative for seeking review of disciplinary matters. Giving credence to both parties' position, we conclude that the intention of the parties as to the scope of the arbitration provision is at least reasonably debatable. Under the circumstances, the issue of arbitrability should have initially been determined by an arbitrator and not by the trial court as was done here. *See Local #1119*, 463 N.W.2d at 296; *see also Packer River Terminal, Inc. v. City of Minneapolis*, 445 N.W.2d 269, 270 (Minn.App.1989) (scope of the arbitration agreement should be determined initially by the arbitrator), *pet. for review denied*, (Minn. Nov. 15, 1989).

Because we have determined that the contention over the scope of the collective bargaining agreement as it pertains to the manner of resolving the grievance over Champion's suspension must be determined in the first instance by an arbitrator, we need not address whether Minn.Stat. § 179A.20 (1988 & Supp.1989) mandates that the issue be arbitrated or whether the Union has effectively bargained away its right to insist upon arbitration.[1]

## DECISION

It is reasonably debatable whether the issue as to the manner of resolving the dispute over Champion's suspension is within the scope of the arbitration clause. The issue of arbitrability. should, as a threshold issue, have been determined by an arbitrator. The trial court erred by refusing to compel arbitration.

Reversed.

---

1. Under the statute, bargaining agreements must provide for binding arbitration to resolve disputes over disciplinary action. However, the statute also contemplates review of such actions by a civil service appeals board.

   *All contracts must include a grievance procedure providing for compulsory binding arbitration of grievances including all written disciplinary actions.*

   *       *       *       *       *       *

   Employees covered by civil service systems * * * may pursue a grievance through the procedure established under this section. *When the grievance is also within the jurisdiction of appeals boards * * *, the employee may proceed through the grievance procedure or the civil service appeals procedure,* but once a written grievance or appeal has been properly filed or submitted by the employee or on the employee's behalf with the employee's consent the employee may not proceed in the alternative manner.

   Minn.Stat. § 179A.20, subd. 4 (Supp.1989) (emphasis added).